IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| JOSEPH W. PRESTIA, *Debtor.* | : : : | Case No. 23-10242-JCM |
| | : | Chapter 7 |
| JOSEPH B. SPERO, TRUSTEE, *Movant,* | : : | Related to Doc. Nos. 109, 111 |
| | : | |
| v. | : : | |
| JOSEPH W. PRESTIA, *Respondent.* | : : | |

## MEMORANDUM OPINION

Before this Court is the ***Trustee's Objection to Claim for Exemption*** ("Objection") filed on November 20, 2023 by Joseph B. Spero as Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate of Joseph W. Prestia (Doc. 109). The *Objection* disputes the claimed exemption of $27,900 in the real estate located at 12188 Abels Road, North Springfield, Pennsylvania 16430 ("The Property") under 11 U.S.C. § 522(d)(1) as set forth in the Debtor's Second Amended Schedule C, filed on October 26, 2023. The Debtor filed an ***Answer to Trustee's Objection to Claim for Exemptions*** on December 4, 2023 (Doc. 111) ("Response") arguing that a co-owner of property who vacates a residence in order to separate from the other co-owner does not abandon the property and may still claim the same as exempt as his residence. For the reasons stated below, based on the facts recited by Counsel at the time of the December 21, 2023 hearing and the facts

1

contained in the documents filed of record in this case,[1] the Court will sustain the Trustee's *Objection* and disallow the exemption claimed by the Debtor under § 522(d)(1).

## JURISDICTION

This Court has the authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334 and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2(A).

## BACKGROUND

On October 9, 2023, the Trustee filed a ***Motion for Private Sale of Real Property Free and Divested of Liens*** ("Motion") (Doc. 94) seeking to sell The Property, which was co-owned by the Debtor and Linda Bressan, for $750,000.[2] Subsequent to the filing of the *Motion*, on October 26, 2023, the Debtor filed an Amended Schedule C claiming an exemption in The Property of $27,900 under § 522(d)(1). The sale of The Property was approved by the Court pursuant to the ***Consent Order Confirming Private Sale of Real Property Free and Divested of***

---

[1] Both parties were afforded the opportunity to request an evidentiary hearing. Neither party made such a request. Therefore, the Court indicted it would make a decision based upon both the facts presented to the Court at the time of hearing and information contained in documents filed of record in this case.

[2] The *Motion* was converted to an Adversary Proceeding at Adv. No. 23-1020-JCM, *sua sponte,* by Order issued on October 27, 2023 (Doc. 103) pursuant to Fed.R.Bankr.P. 7001(3) which requires an adversary proceeding for sales arising under 11 U.S.C. § 363(h) since the sale affected a co-owner's interest. Linda Bressan, the co-owner, had conditionally consented to the sale, so the matter was converted to an adversary proceeding to avoid any potential title issues from arising in the future.

2

*Liens* entered on November 3, 2023 ("Consent Order") (Doc. 15). The sale resulted in net proceeds of $65,356.81[3] to be held by the Trustee pending further order of Court.

The Trustee's *Objection* asserts that § 522(d)(1) does not apply to The Property since the Debtor did not reside there on the date the Petition was filed. In support of that contention, the Trustee points to the information provided by the Debtor in his Voluntary Petition, Statement of Financial Affairs, Statement of Intention, and Testimony at the Meeting of Creditors. The Trustee references Section 5 of the Debtor's Voluntary Petition (Doc. 1) which identifies the Debtor's address as 8051 Simit Lane, Girard, Pennsylvania 16417 ("Simit Lane"). On the Debtor's Statement of Financial Affairs, the Debtor reported that he lived at The Property from October 2020 through April 2023. Further, the Debtor's Statement of Intention, Page 44 of the Petition (Doc. 1), indicates the Debtor's intent to "surrender" The Property. Finally, at the June 21, 2023 § 341 Meeting of Creditors, the Debtor testified that he was no longer living at The Property and that he had lived in the Simit Lane residence for a "a couple of months." At no time prior to the filing of the *Response* did the Debtor indicate he had any intent to return to reside in The Property.

The Debtor's *Response* relies on the premise that in situations where a co-owner vacates a property due to relationship issues that make it difficult to reside together,[4] a debtor does not abandon his homestead exemption. In the Debtor's *Response,* he argued "although perhaps very unlikely, there would have been a possibility of reconciliation between the parties." (Doc.

---

[3] *See* the **Trustee's Report of Sale of Real Property** filed on November 21, 2023 (Adv. Proc. 23-1020-JCM (Doc. 22)). Additional sums of $7,000 and $10,000 remain in escrow pending further order of Court and may ultimately result in additional net proceeds to the Estate.

[4] The extent of the alleged relationship issues between the Debtor and the co-owner are unclear and unknown to the Court since little information related to that subject was provided aside from the conclusory remark that the relationship was contentious.

3

111 at ¶9). He further stated that the Simit Lane residence was meant to be temporary.[5] (*Id.* at ¶11). The Debtor asserted that an unknown and unlikely possibility of returning to The Property entitled him to claim an exemption under § 522(d)(1).

At the December 21, 2023 hearing on the *Objection,* the Trustee appeared and noted the procedural and factual circumstances supporting his position that the Debtor does not qualify for the § 522(d)(1) exemption in The Property. The Trustee pointed out that when the Debtor filed his petition on May 8, 2023 (Doc. 1) he originally valued The Property at $575,000 but did not claim an exemption in it on Schedule C.[6] *December 21, 2023 Audio Hearing Transcript,* 2:31:30 – 2:31:38. On July 19, 2023, the Debtor filed an Amended Schedule A/B (Doc. 30) increasing the value of The Property to $725,000, and at that same time, the Debtor filed an Amended Schedule C, yet still did not claim any exemption in The Property.[7] *Id.* at 2:31:40 – 2:31:53. It was not until October 26, 2023, when he filed a second Amended Schedule A/B (Doc. 100), once again increasing the value of The Property, now to $750,000, that he claimed a $27,900 exemption under 11 U.S.C. § 522(d)(1).[8] *Id.* at 2:31:53 – 2:32:13.

---

[5] Although the Debtor's abode at the Simit Lane property may have only been intended to be temporary, there is no evidence of any intent to move from the Simit Property back to The Property.

[6] At the time of the filing of the original Schedules, based upon the stated value of The Property ($575,000) and the amount of the stated secured claims ($481,976 owed to RoundPoint Mortgage and $59,900 owed to Widget Financial) there was $33,124 of equity in the property.

[7] Based upon the change in the valuation there was $183,124 of equity in The Property.

[8] The Trustee questions the Debtor's initial valuation and subsequent changes to the valuation of The Property, noting that the Debtor increased the value on his Schedule A/B from $575,000 to $750,000. *December 21, 2023 Audio Hearing Transcript,* 2:42:58 – 2:43:49. The Trustee does not allege bad faith on the Debtor's part, but the Court is concerned with the Debtor's apparent gamesmanship with respect to his changing valuation of The Property. Without further evidence of the Debtor's state of mind on this issue, the Court will refrain from reaching any conclusion at this time.

As further evidence that the Debtor did not intend The Property to be his residence at the time of filing, the Trustee noted that on the Debtor's Voluntary Petition (Doc. 1), the Debtor reported that he lived at 8051 Simit Lane, Girard, PA, and during the § 341 Meeting of Creditors, the Debtor stated he had not lived at The Property for approximately two months before filing. *Id.* at 2:32:46 – 2:33:30. The Trustee further reasoned that there were two livable structures on The Property, the main house and a guest house, so if the Debtor actually intended to maintain The Property as his residence, the Debtor could have continued to reside at the guest house, even if there were relationship issues that prevented him from occupying the main house with Linda Bressan. *Id.* at 2:24:15 - 2:34:37. Finally, the Trustee also noted that the last mortgage payment the Debtor made on The Property was paid in March of 2023, the month prior to his departure. *Id.* at 2:34:58 – 2:34:02.

In response to the Trustee's arguments, Counsel for the Debtor analogized these circumstances to those of a woman experiencing domestic violence at the hands of her partner who was forced to vacate a property for her safety and suggested that in those circumstances it would be proper for a debtor to claim the homestead exemption. *Id.* at 2:36:58 – 2:37:12. Although Counsel admitted that there were no domestic violence issues in this case, he argued that the Debtor and Ms. Bressan's contentious relationship justified the Debtor continuing to claim the exemption even though he did not reside at The Property. *Id.* at 2:37:13 – 2:37:50. Counsel argued that it is incorrect to look at a snapshot of the Debtor's circumstances at the time of the filing of the Petition when dealing with this type of domestic issue. *Id.* at 2:37:51 – 2:38:10.

When questioned by the Court as to why the Debtor did not initially elect the exemption, Counsel explained that it was possible that the Debtor's previous counsel had not fully considered the issues and whether the § 522(d)(1) exemption would be an option under these

5

particular circumstances. *Id.* at 2:38:55 – 2:39:08.  Counsel for the Debtor explained that prior to April 2023, the Debtor and Ms. Bressan were cohabitating at The Property.  Counsel attempted to clarify that the Debtor's response at the Meeting of Creditors that he lived at Simit Lane was simply because that was where he was living at the moment, but that is not where he intended to reside indefinitely.  *Id.* at 2:39:08 – 2:39:22. Based on the remote possibility that the Debtor could have reconciled with Ms. Bressan and returned to The Property, the Debtor argued that his absence on the date of filing did not evidence an intent to abandon the homestead exemption.  *Id.* at 2:39:22 – 2:39:30.

## ANALYSIS

Exemptions claimed by debtors are presumed to be valid, and in general, exemptions are to be liberally construed in favor of debtors. *In re Graff,* 457 B.R. 429, 431 (Bankr. W.D. Pa. 2011). *In re Kisewetter,* 2011 WL 4527365 n.8 (Bankr. W.D. Pa. Sept. 28, 2011).  In the case of an objection to a debtor's claimed exemption, the burden is on the objecting party to prove that the exemption is improper. Fed.R.Bankr.P. 4003(c).  When the Trustee produces evidence that the exemption was improperly taken, the burden shifts to the debtor to show the exemption was proper. *In re Yanovich,* 544 B.R. 306, 308 (Bankr. W.D. Pa. 2016).

The Debtor has elected to utilize the Federal Exemptions provided for in 11 U.S.C. § 522(a)(2). The Bankruptcy Code explicitly sets forth the exemption that a debtor may claim in his or her residence, commonly referred to as "the homestead exemption":

> (d) The following property may be exempted under subsection (b)(2) of this section:
>
> (1) The Debtor's aggregate interest, not to exceed $27,900 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence…

6

11 U.S.C. §522(d)(1).  Since the term "residence" is undefined in the Code, further interpretation is required.

I. **Trustee's Position**

The Trustee's position is that the Debtor's absence from The Property on the date of filing disqualifies the Debtor from claiming the § 522(d)(1) exemption.  The Trustee argues that since the Debtor's residence is fixed on the date of filing, and as of the date of filing the Debtor was not residing at The Property, the Debtor cannot claim the homestead exemption.

At the December 21st hearing, the Trustee relied on the United States Supreme Court case *Myers v. Matley* to support the proposition that a debtor's right to claim the homestead exemption is fixed on the date the case is filed, and the property in which the debtor resides at that moment in time constitutes the debtor's residence.  318 U.S. 622, 628 (1943).  The Trustee maintained that the Debtor's financial situation is frozen in time the instant the bankruptcy is filed.  *White v. Stump,* 266 U.S. 310, 313 (1924).  The Trustee highlighted the fact that at the time the Petition was filed, the Debtor listed on his Schedules that he was currently living at Simit Lane, and he had lived at The Property from October 2020 through April 2023.  The Trustee also argued that Debtor's testimony at the § 341 Meeting of Creditors stating he lived at Simit Lane is evidence he did not intend The Property to be his residence.  Specifically, the Debtor was asked where he lived, and he responded he lived at Simit Lane, and he had lived there for a couple of months.

Finally, the Trustee noted that on the Debtor's Statement of Financial Affairs and at the Meeting of Creditors, the Debtor affirmed under penalty of perjury that everything the Debtor had indicated was true and correct.  *See December 21, 2023 Audio Hearing Transcript* 2:33:28 – 2:33:39.  The Trustee argued it is now all too "convenient" for the Debtor to state there

7

was a possibility of a reconciliation between himself and Ms. Bressan in order to claim a homestead exemption in The Property. *Id.* at 2:33:40 – 2:34:15.

### II. Debtor's Position

In the Debtor's *Response*, the Debtor cites to *In re Colton,* 591 B.R. 829 (Bankr. C.D. Ill. 2018) and *In re Moulterie,* 398 B.R. 501 (Bankr. E.D.N.Y. 2008) for the proposition that the Debtor did not abandon the property when he moved out as a result of difficulties in his relationship with Ms. Bressan.

In *Colton,* the Court held that the debtor did not abandon her homestead when she moved out of the home to separate from her husband since she did not intend to permanently abandon her homestead interest. 591 B.R. at 831. The Illinois homestead exemption is based on state law which requires occupancy in order to claim the exemption. *Id.* at 832. The debtor in *Colton* testified that she had no intention to return to the home if her husband was living there, but if she was awarded the property or if her husband voluntarily moved out, she and her children would return. *Id.* at 831. The Court noted that the factual circumstances of a "married person moving out of the homestead because of marital difficulties, to effect a separation in contemplation of divorce, is a circumstance deserving of ***special considerations***." *Id.* at 832. (emphasis added).

In *Moulterie*, the debtor left his family home due to marital issues. 398 B.R. at 504. The trustee argued that the homestead exemption should be disallowed since the debtor was not living at the property when his bankruptcy was filed. *Id*. Mrs. Moulterie filed for divorce and moved with her children into a homeless shelter until the state court granted her exclusive occupancy of the house. *Id.* In October 2006, the debtor moved out and Mrs. Moulterie moved

8

back in. *Id.* In December 2006, while the debtor was living outside of the home, the debtor filed his voluntary petition. *Id.*

The *Moulterie* court determined that the New York state homestead exemption requires actual physical occupancy on a regular basis and an intent to reside there permanently. *Id.* at 505. Courts in New York have held that these elements are satisfied when a debtor spouse leaves the marital home pending the state court's final resolution of the spouse's property rights in the home. *Id.* The rationale for this exception is that without it, it would encourage hostile parties to continue to share the home for fear of loss of property rights. *Id.* New York courts have opined that New York's homestead exemption has been historically "intended to protect the family of a judgment debtor by exempting his home from execution on an outstanding money judgment." *Id.* at 506; *In re Warren,* 38 B.R. 290, 291 (Bankr. N.D.N.Y. 1984). The Court in *Moulterie* noted that the rule has emerged that "where a married couple has separated, pending final resolution of their rights in the marital residence by state court, the spouse who has vacated the marital residence is entitled to claim a homestead exemption in the residence, so long as it is occupied by the other spouse." 398 B.R. at 507. This finding is consistent with the language of § 522(d)(1) which extends the homestead exemption to a "dependent of the debtor" (defined as including the Debtor's spouse). *See* 11 U.S.C. § 522 (a)(1).

In *Matter of Neis*, the Seventh Circuit articulated two exceptions to Wisconsin's requirement in its homestead exemption that the owner be an occupant of the claimed property, which are "(1) when the owner is temporarily absent with an intent to return and (2) when the house is to be sold with the proceeds intended for purchase of another homestead." 723 F.2d 584, 587 (7th Cir. 1983). In applying this exception, courts in Wisconsin look to whether property owners were, as a result of marital problems, involuntarily forced to leave. *Id.* The court reasoned

9

that whether the homestead exemption was abandoned should be based on the owner's intent. *Id.* at 588. In *Neis,* the court determined that the bankruptcy court needed to perform additional fact finding before a determination could be made on whether the debtor intended to abandon his homestead rights. *Id.* at 590.

Counsel for the Debtor argues that the reasoning in the above cases extends to non-married couples as well, and cites to *In re Mangieri,* 2021 WL 1747422 (Bankr. M.D. Fla. May 3, 2021). While the reasoning is not quite the same as the Second and Seventh Circuit cases cited by the Debtor, the overarching principal set forth in *Mangieri* is that the intent of the debtor is what matters in determining whether a debtor abandoned property he is seeking to exempt. *Id.* In *Mangieri,* the debtor purchased a house with his girlfriend (the "Cascada Home"), and when their relationship soured, the debtor initially moved into another bedroom of the Cascada Home. *Id.* at *1. A few months later, the estranged couple listed the Cascada Home for sale, and the debtor left but continued to pay the mortgage and cable/internet bill and split the HOA fees with his ex. *Id.* at *2. His mail continued to be delivered to the Cascada Home. *Id.* When the debtor filed for Chapter 13 bankruptcy, on his Statement of Financial Affairs he listed his address as the Cascada Home, and he testified at his § 341 Meeting of Creditors that he was living at the Cascada Home but had another property that he visited. *Id.* at *3.

In analyzing whether the debtor continued to qualify for the homestead exemption, the Court in *Mangieri* noted that a debtor's homestead remains established until it is abandoned. *Id.* at *4. The court stated that "the debtor's intent is the critical factor in determining whether the homestead has been abandoned," and "should be determined by a consideration of all pertinent facts and circumstances of each individual case." *Id.* The Court ultimately held that the creditor failed to prove that the debtor abandoned the property since the debtor continued to act as an owner

10

of the property by paying the mortgage and certain utilities, leaving furniture and personal belongings at the Cascada Home, not changing his address on important documents, and resuming living at the Cascada Home prior to its sale. *Id.* The Court found that these circumstances all evidenced the debtor's intent to maintain the Cascada Home as his homestead. *Id.* However, while the *Mangieri* court did uphold the debtor's homestead exemption claim, it did not do so based upon the relationship of the parties, but rather on the other factors evidencing the debtor's future intent to reside in the property.

### III. Discussion

In considering the law of this District, this issue was recently analyzed by this Court's colleague, the Honorable Jeffery A. Deller. *See In re Yanovich,* 544 B.R. at 306. In *Yanovich,* the debtor was not residing in the property in which she claimed a § 522(d)(1) homestead exemption at the time she filed her petition. *Id.* at 307. However, the record revealed that the debtor intended to utilize the property as her primary residence, and she was in the process of moving into the property when her bankruptcy was filed. *Id.* Judge Deller, in his Memorandum Opinion, analyzed the multitude of approaches taken by various courts on the issue of what constitutes "a residence" under § 522(d)(1). That discussion will not be repeated herein, but the parties are directed to *Yanovich* for further edification on those various approaches.

The court in *Yanovich* also analyzed the concept of "constructive occupancy" which arises when a debtor leaves a premises at some point, but then when a bankruptcy case is filed, states an intent to return. *In re Yanovich,* 544 B.R. at 312. The court decided that although the focus should be on the debtor's intent, the debtor's intent to occupy a home in the future, alone, is insufficient to show constructive occupancy. 544 B.R. at 312; In *re Corse,* 486 B.R. 241, 249 (Bankr. D.R.I. 2013*), aff'd on other grounds,* C.A. No. 13–282S, 2014 WL 652268 (D.R.I. Feb.

11

19, 2014).  A vague statement of a future intent to occupy a premises "without the production of corroborating evidence" is inadequate.  *In re Yanovich,* 544 B.R. at 312; *In re Feliciano,* 487 B.R. 47, 52 (Bankr. D. Mass. 2013).

Since a self-serving statement of intent to reside in a particular location is insufficient to prove constructive occupancy, the debtor must also show he has a "meaningful ability to occupy the property imminently or within a reasonable time." *Id.; quoting In re Bennett,* 192 B.R. 584, 588 (Bankr. D. Me. 1996).  The court concluded that, as of the date of the filing, the debtor intended the property to be her residence based on the debtor's actions of moving some of her belongings into the home, identifying the property as her residence in court filings (Schedule A), and stating that she intended to retain the property as her residence in her Statement of Intention. *In re Yanovich,* 544 B.R. at 312.  Therefore, under those circumstances, the § 522(d)(1) exemption was properly claimed even though the debtor was not residing in the property on the petition date. *Id.*

This Court agrees with and echoes the reasoning set forth in *Yanovich,* but based upon the facts on this case, comes to the opposite conclusion as to the propriety of the exemption claim. The Debtor has not presented any evidence that it was his intent to return to and reside in The Property as his residence on the date that he filed his Petition.  The Debtor's hollow statement in his *Response,* filed several months post-petition, that he may have intended to live at The Property at some undefined point in the future is insufficient for the Debtor to be considered to have constructive occupancy of The Property.  There are no corroborating factors that show the Debtor actually intended to, and/or had the means to, reside in the premises, and those factors and intent must have existed on the date the Petition was filed.

12

The Debtor filed this case on May 8, 2023 and at that time stated his residence was Simit Lane. The location of the Debtor's belongings, with the exception of one handgun,[9] are listed in Schedule C as located at Simit Lane. The Debtor's Statement of Intention for Individuals Filing Under Chapter 7 (Doc. 1) stated he intended to surrender The Property. He indicated at the Meeting of Creditors that his residence at the time of filing was Simit Lane. Unlike the *Mangieri* case cited by the Debtor, the Debtor did not continue to make any mortgage payments or otherwise pay any bills related to The Property after his departure. All of these facts support the conclusion that the Debtor did not intend that The Property be considered as his residence.

Moreover, the Debtor's circumstances are not analogous to the New York cases. The New York cases cited by the Debtor outline an exception to New York's general rule that an individual must be residing in a premises for the homestead exemption to apply. *See In re Moulterie,* 359 B.R. at 506. This exception allows married spouses who vacated the marital residence to continue to elect the homestead exemption until a state court dissolution/distribution order has been issued. *Id.* The circumstances herein are distinguishable as the Debtor was not married to the co-owner of The Property, and there was no indication of any pending action between them that would potentially award the Debtor with the exclusive right to The Property. This Court is not aware of any case applying the New York standard set forth in *Moulterie* where the married party exemption has been applied to non-married co-owners. Additionally, a plain reading of § 522(d)(1) does not permit an exemption to be claimed in a property occupied by a non-married co-owner who is not a dependent of the Debtor.

---

[9] The Debtor states in his Schedule C "Debtor does not currently have access to this firearm as it is located at his **previous residence** of 12188 Abels Road, North Springfield, PA 16430 and he is not able to obtain the firearm form his ex." (emphasis added).

13

Further, there is no evidence of any domestic abuse that would support a conclusion that the Debtor was forced to vacate The Property for his personal safety, especially considering that there was a secondary residence situated on The Property that he could have occupied separate and apart from the co-owner. The Debtor has not shown any palpable plan to reside at The Property at any point after his departure in April 2023 and has not presented any evidence of any intent to return.

## CONCLUSION

After the Debtor moved out of The Property in April 2023, based on the information provided to this Court, the Debtor did not make any demonstrated showing of an intent to return. The Debtor's vague and uncorroborated statement that he may return to The Property someday is insufficient to show the Debtor had constructive occupancy of The Property at the time of the filing of his Petition especially when all other evidence supports the conclusion that he had moved out, and it was his intent to surrender The Property.[10] Based on the foregoing, the Debtor's circumstances do not qualify him to elect the § 522(d)(1) exemption in The Property. Therefore, the Court will sustain the Trustee's *Objection* and disallow the Debtor's claimed exemption under § 522(d)(1). An appropriate Order will be entered in accordance with this Memorandum Opinion.

Dated: January 12, 2024

SIGNED
1/12/24 12:26 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

BY THE COURT:

John C. Melaragno, Judge
United States Bankruptcy Court

---

[10] The Court acknowledges the scenario could arise where a debtor indicates an intent to surrender a residence she is living in at the time of filing while continuing to be eligible for a § 522(d)(1) exemption. However, in this case, the Debtor's absence from the premises along with a demonstrated intent to surrender the property indicates a lack of intent for the premises to be considered his "residence" for purposes of § 522(d)(1).

14